IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC., a Georgia nonprofit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. _____ |
| v. | ) ) | DEMAND FOR JURY TRIAL |
| THE SEVEN SIX, LLC, a Tennessee limited liability company, and CHASE KELLEY, an individual | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff University of Georgia Athletic Association, Inc. ("UGAA" or "Plaintiff"), states the following for its Complaint against Defendants The Seven Six, LLC ("The Seven Six") and Chase Kelley ("Kelley") (collectively, "Defendants"):

1.    This is an action for trademark infringement and dilution, unfair competition, and deceptive trade practices arising from Defendants' unlawful use of UGAA's trademarks, color schemes, and other source-identifying indicia on Defendants' apparel and other merchandise.  The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; the Georgia Deceptive Trade

Practices Act, O.C.G.A. § 10-1-370, *et seq.*; the Georgia Anti-Dilution Statute, O.C.G.A. § 10-1-451(b); and the common law of Georgia.

## INTRODUCTION

2.      Founded in 1785, the University of Georgia ("the University") is the first university chartered by a state government and the flagship institution of the University System of Georgia.   More than 38,000 students are enrolled at the University and more than 325,000 alumni live worldwide.[1]  In addition, millions of fans follow the University's athletic programs.  The University has achieved forty-seven national championships in NCAA team athletic events, including the 2021 College Football National Championship—with more than 22 million people watching the broadcast of the national championship game.[2]

3.      UGAA is a Georgia nonprofit corporation and cooperative organization of the University.  UGAA is responsible for managing all aspects of the University's athletic programs.  Like many organizations, UGAA uses trademarks to identify its products and to distinguish those products from products made, sold, or provided by others.  UGAA owns federal trademark registrations and common law trademark rights related to athletics programs at the University, including the words BULLDOGS, DAWGS, and numerous other well-known logos and design marks.

---

[1] *See generally*  https://www.usg.edu/institutions/profile/university_of_georgia.
[2] *See* https://espnpressroom.com/us/press-releases/2022/01/2022-college-football-playoff-national-championship-nets-22-6-million-viewers-cables-top-telecast-in-two-years/.

These trademarks are among UGAA's most important assets.  UGAA licenses its marks for use in connection with official team apparel, merchandise, and other products.  Royalties from licensed products are returned to the University to help support University programs and services.  Proper usage of trademarks helps to promote and protect the reputation of UGAA, the University, and its licensees. UGAA has invested significant resources to promote and protect commercial use of marks associated with the University.  UGAA's efforts help to ensure that its marks do not become distorted through improper usage, protect against the possibility of dilution, and enhance the goodwill associated with the marks.[3]

4.  Defendants have sold and are selling apparel and merchandise that incorporates word marks, color schemes, and other source-identifying indicia associated with the University's athletic teams and events without a license or other authorization from UGAA.  Defendants use this source-identifying indicia in combination with other terminology and information in a way that is calculated to create the false impression that Defendants' products are affiliated with the University's athletic teams and events.  Defendants' conduct diverts revenue away from licensed products that would help support University programs and services for Defendants' own financial gain.  On information and belief, Defendant Kelley is

---

[3] *See generally* https://georgiadogs.com/sports/2017/6/16/licensing.

a principal at The Seven Six and has directed, controlled, authorized, approved, and/or otherwise been intimately involved in the conduct alleged in this Complaint.

5.      Over the last several years, representatives of UGAA have contacted Defendants on multiple occasions to demand that Defendants cease the foregoing conduct, including two letters from the undersigned law firm and multiple emails from UGAA's trademark licensing representative.   Defendants, however, have stopped responding the UGAA's outreach and have persisted in offering products that use UGAA word marks, color schemes, and other source-identifying indicia associated with the University's athletic teams and events to suggest an affiliation with the University.  Defendants' misconduct is likely to cause confusion, deceive consumers, and harm UGAA and will continue to do so absent relief from this Court.

## THE PARTIES

6.      UGAA is a non-profit corporation organized and existing under the laws of Georgia, having its principal place of business at 1 Selig Circle, Athens, Georgia 30602.  UGAA is, and has for many years been, well known among both University alumni and fans of collegiate sports in general as a provider of services in the nature of athletic events and a wide variety of licensed goods and services bearing marks associated with the University, with which UGAA is affiliated.

7.      On information and belief, Defendant The Seven Six is a Tennessee limited liability company with its principal place of business at 3656 Trousdale Dr.,

Suite 105, Nashville, Tennessee 37204-4534.  The Seven Six offers for sale apparel and merchandise centered around Southeastern U.S. collegiate and professional athletics.  Defendant The Seven Six offers its products for sale on an interactive website, *i.e.*, www.thesevensix.com.  On information and belief, Defendant The Seven Six also offers its products for sale through wholesale relationships with third parties, *e.g.*, https://www.thesevensix.com/where_to_buy.

8.     On information and belief, Defendant Kelley is an individual of the full age of majority residing in Davidson County, Tennessee, and at all times relevant to this Complaint, is and was a principal of The Seven Six.  Further, on information and belief, Defendant Kelley is a principal and corporate officer of The Seven Six. On information and belief, Defendant Kelley directed, controlled, participated in, performed, authorized, approved, ratified, actively and knowingly caused, and was the moving, active, conscious force behind the acts of The Seven Six—as well as acts of infringement in his individual capacity—as addressed in this Complaint.

## JURISDICTION AND VENUE

9.     This court has jurisdiction over the subject matter of this action pursuant to section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims under Georgia law pursuant to 28 U.S.C. §§ 1338 and 1367(a).

10.     This court has personal jurisdiction over the Defendants because the

Defendants (a) operate an interactive website that allows consumers to purchase Defendants' products in this district, *i.e.*, https://www.thesevensix.com; (b) intentionally target consumers in this district for sales of the products at issue, in particular with their "Athens Collection" products, *i.e.*, https://www.thesevensix.com/athens, and through products promoted on Defendant Kelley's Twitter account, *i.e.*, https://twitter.com/ChanceDawg19; (c) on information and belief, regularly transact business, solicit business, and derive substantial revenue from goods used in Georgia and this judicial district; and (d) cause injury to Plaintiff by their acts in this judicial district.

11.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b).

## **PLAINTIFF'S ACTIVITIES AND TRADEMARKS**

12.      The University of Georgia's athletics programs are widely followed by alumni and fans around the county.   These athletics programs are steeped in traditions—including school colors, the school mascot, and various sayings and symbols—all of which are closely tied to the University's identity.[4]

13.      For more than a century, the University and UGAA have used the color combination of red and black as the official colors of the University.  The color silver has also been closely associated with the University and UGAA.  Under Wally Butts, who became the University's head football coach in 1939, the football team began

---

[4] *See generally* https://georgiadogs.com/sports/2017/6/16/traditions.

wearing silver pants.  Fans referred to "Silver Britches" in chants and elsewhere. The phrase gained particular traction in the 1950s with the chant "Go, You Silver Britches."  In 1964, football coach Vince Dooley re-designed the uniform to use white pants, but re-instituted the Silver Britches in 1980 just prior to what turned out to be a national championship season.



"Silver Britches"

*See* https://georgiadogs.com/sports/2017/6/16/football-media-guides at 220. Red and black, along with silver and/or white, are known as the school colors (the "UGAA Colors").

14.     The University mascot is a Bulldog, which dates back to November 1920 when a series of articles in Atlanta newspapers described the football team as "Bulldogs."  As a result, the University's athletics teams are sometimes referred to as "the Georgia Bulldogs," "the Bulldogs," or "the Dawgs."  The Bulldog mascot commonly appears in several forms: (i) print depictions that include variations of a bulldog head, a bulldog standing upright, and a bulldog standing on four legs; (ii) Uga, a live English bulldog from a line that has been owned by Frank W. "Sonny" Seiler of Savannah, GA. since 1956; and (iii) Hairy Dawg, a costumed mascot that

first appeared in the 1981 Sugar Bowl.

15.     The University's football team plays its home games at historic Sanford Stadium in Athens, Georgia.  Games played at Sanford Stadium are famously played "between the hedges," referring to the English privet hedges that have surrounded the field since 1929.

16.     In the 1960s, the University's football team began wearing a "G" on its helmets—first a block G design and then a circle G design that is similar to the circle G design currently in use on the helmets.

17.     The phrase "How 'Bout Them Dawgs" came to be associated with the University in the mid-to-late 1970's.  The phrase became more popular and well known when the University won the college football national championship in 1980. A major wire-service used the phrase in its story of Georgia's victory, and many newspapers picked it up as part of their own stories.

18.     During a 1982 football game between the University and Auburn, legendary announcer Larry Munson implored the team to "hunker it down one more time" for a defensive stop near the end of the game.  As a result, the phrase "hunker down" came to be associated with the University.

19.     In 2016, then-first-year head coach Kirby Smart introduced a new motto for the football team: "Attack the Day."

20.     UGAA is, and has been at all times pertinent hereto, the owner of all

right, title, and interest in and to numerous marks related to University traditions, including marks related to the bulldog mascot, the circle G design, the block G design, "Silver Britches," "Between The Hedges," "How 'Bout Them Dawgs," "Hunker Down," "Attack The Day" and various other verbiage, logos, and color schemes, including without limitation those marks shown in the attached Exhibit A (collectively, the "UGAA Marks").

21.    UGAA is the owner of the federal trademark registrations set forth in Exhibit B (collectively, the "UGAA Federal Registrations"), which the United States Patent and Trademark Office (the "PTO") issued on the respective dates set forth in Exhibit B.  True and correct copies of the certificates of registration for the UGAA Federal Registrations are attached hereto as Exhibit C.

22.    In addition, UGAA has filed with the PTO an appropriate declaration under Section 15 of the Lanham Act with respect to each of registration numbers 1,249,346; 1,252,488; 1,276,534; 1,286,481; 1,286,482; 1,945,116; 2,237,895; 3,027,008; 3,040,390; 3,040,391; 3,044,695; 3,044,738; 3,044,756; 3,065,107; 3,075,673; 3,099,998; 3,105,938; and 3,239,723.  Each of the foregoing registrations therefore has become incontestable in accordance with Section 15 of the Lanham Act, 15 U.S.C. § 1065, and each is conclusive evidence of the validity of the registered mark and of the registration of the mark, of UGAA's ownership of the registered mark, and of UGAA's exclusive right to use the registered mark in

commerce in connection with the goods and/or services identified therein.

23.     As a result of longstanding, widespread, extensive, and continuous use of the UGAA Colors, especially in connection with the UGAA Marks, the UGAA Colors have become an invaluable source identifier for the goods and services of UGAA and its licensees.

24.     UGAA has used the UGAA Marks and the UGAA Colors in interstate commerce and throughout the United States continuously and extensively for many years in connection with the goods and services of UGAA and its licensees.  UGAA therefore has common law rights, fully independent of and in addition to the UGAA Federal Registrations, in the UGAA Marks and the UGAA Colors.

25.     Since long before the acts of Defendants complained of herein, the UGAA Marks and the UGAA Colors have been, and are now, used by UGAA and its licensees.  UGAA licensees include 47 Brand, Fanatics, Homefield, Junk Brand, New World Graphics, Nike, Outerstuff, and Pressbox, among others.  Examples of UGAA licensed products include, without limitation, the following items:









26.    Each of UGAA's licensees benefits from use of the famous UGAA

Marks and UGAA Colors, and such licensed use inures to the benefit of UGAA.

27.     As a result of such longstanding, widespread, extensive, and continuous use, UGAA enjoys well-established and exclusive rights in and to each of the UGAA Marks and in and to the UGAA Colors, especially when used in connection with the UGAA marks, for the goods and services of UGAA and its licensees.  Each of the UGAA Marks and the UGAA Colors, especially when used in connection with the UGAA marks, identifies and distinguishes the goods and services of UGAA and its licensees from the goods, services, and businesses of others; symbolizes the goodwill of UGAA and its licensees; and is well known nationwide.  As a result, each of the UGAA Marks and the UGAA Colors is of great value to UGAA in connection with the goods and services of UGAA and its licensees.

28.     As a result of the longstanding, widespread, continuous, and extensive use of the UGAA Marks and the UGAA Colors by UGAA and its licensees, each of the UGAA Marks and the UGAA Colors, especially when used in connection with the UGAA marks, has become well and favorably known in the fields of collegiate athletics and for a wide variety of goods and services.  As a result, each of the UGAA Marks and the UGAA Colors, especially when used in connection with the UGAA marks, has come to represent goods and services of high quality, and is associated with goods and services provided or authorized by UGAA or its licensees.

29.     In connection with the foregoing use by UGAA and its licensees, each of the UGAA Marks and the UGAA Colors, especially when used in connection

with the UGAA marks, has been widely publicized and is recognized as being identified with UGAA and its licensees.  As a result of the foregoing longstanding, widespread, continuous, and extensive use by UGAA and its licensees, each of the UGAA Marks and the UGAA Colors, especially when used in connection with the UGAA marks, is distinctive and famous.

## DEFENDANTS' INFRINGING CONDUCT

30.    Defendants sell apparel and other merchandise that infringe UGAA's rights in and to the UGAA Marks and UGAA Colors and otherwise unfairly compete with products properly licensed by UGAA.

31.    Defendants' merchandise incorporates the UGAA Marks and UGAA Colors or confusingly similar imitations thereof.  Consumers are likely to believe that UGAA would naturally include in its offerings—or expand its offerings to include—designs similar to those produced by Defendants for officially licensed apparel and merchandise.

32.    Defendants' merchandise frequently combines the UGAA Marks and/or UGAA Colors with references to, *inter alia*, the following: (a) well-known and highly-publicized sporting events in which the University's athletics teams participated; (b) the University's opponent(s) in well-known and highly-publicized athletic events; (c) the geographic area in which the University's athletic events take place; (d) titles and honors bestowed as a result of the University's success in athletic

events; (e) the University's historic athletic successes, accomplishments, and personalities; and (f) the geographic area in which the University is located.

33.    By way of example, and without limitation, Defendants have sold or offered for sale t-shirts and other products shown in the following images as part of its "Athens Collection":



34.    These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) portions of the UGAA trademarked circle G or full block G logos; and/or (3) the iconic Georgia red football helmet.

35.    As another example, and without limitation, Defendants have sold or offered for sale t-shirts and other products shown in the following images as part of its "Athens Collection":



36.    These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) reference to the UGAA trademarked phrase HOW 'BOUT THEM DAWGS; (3) reference to the 2021 College Football National Championship (top right); and/or

(4) reference to the University's 2022 Southeastern Conference football championship (bottom right).

37.     As another example, and without limitation, Defendants have sold or offered for sale t-shirts shown in the following images as part of its "Athens Collection":



38.     These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors;

(2) reference to the UGAA trademarked phrase BETWEEN THE HEDGES; and/or

(3) geographic indication of the University's location in Georgia.

39.     As another example, and without limitation, Defendants have sold or offered for sale t-shirts shown in the following images as part of its "Athens Collection":



40.    These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) bulldogs and portions of the UGAA trademarked Bulldog logos; (3) references to UGAA trademarked mascot Hairy Dawg (including, as to the bottom right image, marketing the t-shirt as "Hairy's No. 1"); and/or (4) reference to the 2021 College Football National Championship (bottom left).

41.    As another example, and without limitation, Defendants have sold or offered for sale t-shirts and other products shown in the following images as part of its "Athens Collection":



 

42.     These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) the UGAA common law trademark SILVER BRITCHES; (3) the UGAA common law trademark red, white, and black stripe; and/or (4) the date and location of the University's 2022 Southeastern Conference football championship (bottom right); and/or (5) geographic indication of the University's location in Georgia.

43.     As another example, and without limitation, Defendants have sold or offered for sale apparel shown in the following image as part of its "Athens Collection":



44.    These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) the UGAA common law trademark HUNKER DOWN; (3) the UGAA common law trademark red, white, and black stripe; and (4) geographic indication of the University's location in Georgia.

45.    As another example, and without limitation, Defendants have sold or offered for sale t-shirts shown in the following images as part of its "Athens Collection":



46.    These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; and (2) the UGAA trademarked phrase ATTACK THE DAY.

47.    As another example, and without limitation, Defendants have sold or offered for sale t-shirts shown in the following images as part of its "Athens Collection":



48.     These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; and (2) references to the University's common athletic opponents and/or athletic events, including Louisiana State University (and specifically referencing the date and location of the 2022 Southeastern Conference Football Championship Game, left) and the 2022 Chick-Fil-A Peach Bowl (referencing the 2022 College Football Playoff game, right).

49.     As another example, and without limitation, Defendants have sold or offered for sale t-shirts and other products shown in the following images as part of its "Athens Collection":



50.     These designs offered for sale by Defendants are carefully crafted to conjure and trade upon the University's identity by including: (1) the UGAA Colors; (2) references to the University's 2021 College Football National Championship; and (3) geographic indicators of the University's location in Georgia (and specifically Athens, Georgia, as well as images associated with the location of the 2021 National Championship Game in Indianapolis, Indiana, bottom).

51.    On information and belief, Defendant Kelley has directed, controlled, participated in, engaged in, performed, authorized, approved, ratified, actively and knowingly caused, and was the moving, active, conscious force behind the acts of The Seven Six.  For example, Defendant Kelley regularly promotes Defendants' infringing products on his Twitter feed, as shown in the following images:



52.    As a corporate officer who directs, controls, ratifies, participates in, and/or is the moving force behind the infringing activity of Defendant The Seven Six, Defendant Kelley is personally liable for such infringement without regard to piercing of the corporate veil.

53.     Defendant Kelley also has marketed on his Twitter feed apparel and other merchandise shown in the following images:



54.     On information and belief, Defendant Kelley offers the above and other items for sale, including sales initiated through direct messaging (or "DM") on Twitter.  These apparel designs offered for sale by Defendant Kelley are carefully crafted to conjure and trade upon the University's identity by including: (1) the

UGAA Colors; (2) reference to University athletic programs and/or events; (3) the UGAA trademarked circle G logo; (4) portions of the UGAA trademarked bulldog logos; and/or (5) reference to the 2021 College Football National Championship.

55.    Defendants' products are not manufactured by UGAA, nor has UGAA licensed, authorized, sponsored, endorsed, or approved Defendants' products.

56.    Defendants' products are similar to, and compete with, goods sold or licensed by UGAA, and are sold through the same channels of trade.

57.    The UGAA Marks and UGAA Colors are and have been used extensively and continuously by UGAA and/or its licensees long before Defendants manufactured, offered for sale, or sold Defendants' products.

58.    Defendants' products are likely to deceive, confuse and mislead prospective purchasers and purchasers into believing that Defendants' products were produced, authorized, or in some manner associated with UGAA or the University. The likelihood of confusion, mistake, and deception engendered by Defendants' products is causing irreparable harm to UGAA.

59.    Purchasers and prospective purchasers viewing Defendants' products and perceiving a defect, lack of quality, or any impropriety are likely to mistakenly attribute them to UGAA.  By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to UGAA's goodwill and reputation.

60.     Defendants knew or should have known of UGAA's prior use and/or federal registrations of the UGAA Marks and UGAA Colors.  A simple search on the PTO website would have shown UGAA's federal registrations, and an internet search would have shown UGAA's extensive prior use in commerce.  UGAA's federally registered and common law trademarks are further referenced in UGAA's brand manual and logo guide, both of which are available on UGAA's website.[5]

61.     In addition, prior to filing this action, UGAA notified Defendants of UGAA's exclusive rights to the UGAA Marks and UGAA Colors on several occasions, and demanded that Defendants cease using the UGAA Marks and UGAA Colors in connection with its apparel and merchandise.  Defendants have failed to comply.

62.     Defendants knew, or should have known, that their use of the UGAA Marks would likely cause confusion, mistake, or deception among the relevant public.

63.     On information and belief, Defendants' products are calculated to trade on the goodwill and commercial draw of UGAA's reputation and identity. Defendants are attempting to pass off their products as UGAA authorized products.

64.     On information and belief, Defendants willfully, intentionally and maliciously adopted imitations of the UGAA Marks, combined said imitations with

---

[5] *See, e.g.*, https://georgiadogs.com/sports/2017/6/16/licensing.

other material likely to cause and enhance confusion (including, without limitation, the UGAA Colors), and have otherwise deliberately attempted to pass off their products as those provided or licensed by UGAA.

65.    On information and belief, Defendants' wrongful acts alleged herein have been deliberate, willful, and in disregard of UGAA's rights.  Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn revenues and profits on the strength of UGAA's marketing, advertising, consumer recognition, and goodwill associated with its UGAA Marks.

66.    By reason of Defendants' wrongful acts alleged herein, UGAA is likely to suffer, has suffered, and will continue to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendants and/or the goods and services offered by Defendants are affiliated with, sponsored by, approved by, or originate from UGAA.

67.    By reason of Defendants' wrongful acts alleged herein, UGAA is likely to suffer, has suffered, and will continue to suffer dilution of the distinctive quality of the UGAA Marks.

68.    The harm to UGAA caused by the use and promotion of the infringing UGAA Marks by Defendants is irreparable and will continue unless and until this Court enjoins Defendant.

**FIRST CLAIM**
**Federal Trademark Infringement, 15 U.S.C. § 1114(1)**
**(Against All Defendants)**

69.     UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this

Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint

as to Defendant Kelley.

70.     Defendants' unauthorized use of marks that are the same as, or

confusingly similar to, UGAA's federally registered trademarks in connection with

Defendants' apparel and merchandise constitutes a use in commerce that is likely to

cause confusion, mistake, and deception as to (i) the source or origin of Defendants'

products, (ii) whether Defendants are affiliated with UGAA, and (iii) whether

Defendants' products are authorized by UGAA.

71.     Defendants' conduct as described above constitutes infringement of the

UGAA Federal Registrations in violation of Section 32(1) of the Lanham Act, 15

U.S.C. § 1114(1).

72.     Defendants' use of UGAA's federally registered trademarks was

undertaken and/or continued with full knowledge of UGAA's rights, thus

constituting willful infringement.

73.     UGAA has been damaged by the wrongful conduct of Defendants as

alleged above.

74.     By reason of Defendants' wrongful conduct, UGAA is entitled to recover Defendants' wrongful profits and UGAA's actual damages, plus enhanced damages and attorneys' fees and costs as an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117(a).

75.     Defendants' wrongful conduct has caused and, without judicial intervention, will continue to cause UGAA irreparable harm for which there is no adequate remedy at law.

**SECOND CLAIM**
**Federal Unfair Competition and False Designation of Origin,**
**15 U.S.C. § 1125(a)**
**(Against All Defendants)**

76.     UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint as to Defendant Kelley.

77.     Defendants' unauthorized use of marks that are the same as, or confusingly similar to, the UGAA Marks in connection with their apparel and merchandise constitutes unfair competition.

78.     Defendants' unauthorized use of the UGAA Marks in connection with their apparel and merchandise constitutes use in commerce of a false or misleading designation of origin that is likely to deceive, to cause mistake, or to cause confusion as to the association of Defendants' products with UGAA, and as to UGAA's affiliation with Defendants and its sponsorship of Defendants' activities.

31

79.     Defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     Defendants' use of the UGAA Marks was undertaken and/or continued with full knowledge of UGAA's rights, thus constituting willful unfair competition.

81.     UGAA has been damaged by the wrongful conduct of Defendants as alleged above.

82.     By reason of Defendants' wrongful conduct, UGAA is entitled to recover Defendant's wrongful profits and UGAA's actual damages, plus enhanced damages and attorneys' fees and costs as an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117(a).

83.     Defendants' wrongful conduct has caused and, without judicial intervention, will continue to cause UGAA irreparable harm for which there is no adequate remedy at law.

### THIRD CLAIM
**Federal Trademark Dilution, 15 U.S.C. § 1125(c)**
**(Against All Defendants)**

84.     UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint as to Defendant Kelley.

85.     This claim arises under federal law for trademark dilution with regard to the UGAA Marks.

86.     The UGAA Marks are famous and distinctive, inherently or through acquired distinctiveness, throughout the United States.

87.     Defendants' unauthorized commercial use of the UGAA Marks began after the UGAA Marks became famous, and their unauthorized use of the UGAA Marks is likely to cause the dilution of said marks by blurring and/or tarnishment.

88.     The acts of Defendants described above constitute dilution under federal law in violation of 15 U.S.C. § 1125(c).

89.     In view of the willful nature of Defendants' dilution by blurring and/or tarnishment, this is an exceptional case within the meaning of 15 U.S.C. §§ 1117(a) and 1125(c)(5), entitling UGAA to recover fees, among other monetary remedies.

90.     The acts of Defendant described above have caused and, without judicial intervention, will continue to cause UGAA irreparable harm for which there is no adequate remedy at law.

### FOURTH CLAIM
**Trademark Dilution Under The Georgia Anti-Dilution Statute,
O.C.G.A. § 10-1-451(b)
(Against All Defendants)**

91.     UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint as to Defendant Kelley.

92.    The UGAA Marks are inherently distinctive.  UGAA has extensively and continuously promoted and used the UGAA Marks in the United States, and the UGAA Marks thereby also acquired distinctiveness.

93.    Defendants' unauthorized use of the UGAA Marks in connection with their apparel and merchandise is likely to injure UGAA's business reputation or to dilute the distinctiveness of the UGAA Marks by eroding the public's exclusive identification with UGAA of its distinctive, well-known marks, and otherwise lessen the capacity of the UGAA Marks to identify and distinguish UGAA's own products.

94.    On information and belief, Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the UGAA Marks and to cause dilution of the UGAA Marks, all to the irreparable injury of UGAA.

95.    Defendants are causing and will continue causing irreparable injury to UGAA's goodwill and business reputation, and dilution of the distinctiveness and value of the UGAA Marks in violation of the Georgia anti-dilution statute, O.C.G.A. § 10-1-451(b).  UGAA is therefore entitled to injunctive relief and reasonable attorneys' fees.

## FIFTH CLAIM
**Deceptive Trade Practices Under The Georgia Deceptive Trade Practices Act,**

**O.C.G.A. § 10-1-370,** *et seq.*
**(Against All Defendants)**

96.    UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint as to Defendant Kelley.

97.    Defendants' unauthorized use of marks that are the same as, or confusingly similar to, the UGAA Marks in connection with their apparel and merchandise constitutes a deceptive trade practice under the Georgia Deceptive Trade Practices Act, in that such use allows Defendants to pass off goods and services of Defendants as goods and services of UGAA; causes a likelihood of confusion or misunderstanding as to the source, sponsorship or approval of Defendants' goods and services; causes likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendants with UGAA; and in other ways.

98.    On information and belief, Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the UGAA Marks and to engage in deceptive trade practices, to the irreparable injury of UGAA.

99.    Defendant is causing, and will continue to cause, a likelihood of confusion and misunderstanding and irreparable injury to UGAA's goodwill and business reputation, in violation of the Georgia Deceptive Trade Practices Act,

O.C.G.A. § 10-1-370, *et seq*.  UGAA is therefore entitled to injunctive relief, costs, and reasonable attorneys' fees.

### SIXTH CLAIM
**Georgia Common Law Unfair Competition**
**(Against All Defendants)**

100.  UGAA restates and re-alleges paragraphs 1-50 and 55-68 of this Complaint as to Defendant The Seven Six and paragraphs 1-68 of this Complaint as to Defendant Kelley.

101.  Defendants' actions constitute unfair competition under the common law of Georgia.  Defendants' unauthorized use of marks that are the same as, or confusingly similar to, the UGAA Marks in connection with their apparel and merchandise has caused, and unless enjoined, will continue to cause, confusion or misunderstanding among the consuming public as to the affiliation, connection, or association between Defendants and UGAA and/or as to the sponsorship or approval by UGAA of Defendants' products and services.

81.  Defendants have acted in bad faith by intentional use of marks that are the same as, or confusingly similar to, the UGAA Marks to profit from the goodwill associated with the UGAA Marks.

82.  UGAA and the public have been and are likely to continue to be damaged as a result of Defendants' unfair competition.  Unless enjoined by this

Court, Defendants will continue the foregoing unfair competition, causing UGAA immediate and irreparable damage.

83.    On information and belief, Defendants have and will continue to profit from their unfair competition.  Defendants' actions are causing and will cause UGAA monetary damage in amounts presently unknown but to be determined at trial.

84.    UGAA has no adequate remedy at law.  UGAA will be irreparably injured because of its loss of goodwill and reputation stemming from Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, UGAA prays for relief as follows:

1.    For judgment in favor of UGAA and against Defendants on all of UGAA's claims;

2.    For a preliminary and permanent injunction prohibiting Defendant The Seven Six and each of its respective owners, officers, directors, agents, servants, employees, attorneys, and all others in active concert or participation with them, as well as Defendant Kelley individually or through any corporation, partnership, subsidiary, division, or trade name, from the following:

a.    further infringing use of the UGAA Marks or any other copy, reproduction, or colorable imitation or simulation of the UGAA

Marks, either alone or in combination with other words, names, or symbols, on or in connection with any apparel, or other goods or services;

b.   using any trademark, service mark, name, logo, design, color scheme, or source designation of any kind in connection with Defendants' clothing or other goods or services, or the goods or services of any entity with which Defendants are associated or affiliated, that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by the UGAA or the University; or are sponsored or authorized by or in any way connected or related to UGAA or the University; or representing, implying, or suggesting to any third party that Defendants or their products or services are affiliated with, sponsored by, licensed by, or otherwise associated with UGAA or the University;

c.   using any trademark, service mark, name, logo, design, color scheme, or source designation of any kind or in connection with Defendants' clothing or other goods or services, or the goods or services of any entity with which Defendants' are associated or affiliated, that is dilutive of the UGAA Marks;

d.      passing off, palming off, or assisting in passing off or palming

off, Defendants' clothing or other goods or services, or the goods

or services of any entity with which Defendants are affiliated or

associated, as those of UGAA or the University, or otherwise

continuing any and all acts of unfair competition as alleged in

this Complaint;

e.      registering or applying to register any trademark, service mark,

domain name, trade name, or other source identifier or symbol

of origin consisting of or incorporating any mark that infringes

or is likely to be confused with the UGAA Marks or any goods

or services of UGAA;

f.      aiding, assisting, or abetting any other individual or entity in

doing any act prohibited by the Court's granted relief; and

g.      otherwise unfairly competing with UGAA;

3.      For an order requiring Defendants to immediately direct all

wholesalers, distributors, retailers, consignors, marketers, and other establishments

and individuals that distribute, advertise, promote, sell, or offer for sale Defendants'

products to cease forthwith the sale, offer for sale, advertising, and promotion of all

of Defendants' products prohibited by Paragraphs 2(a)-(d);

4.      For an order requiring that all of Defendants' products and advertising materials using the UGAA Marks or any other copy, reproduction, or colorable imitation or simulation of the UGAA Marks be seized and impounded and that all of these items be destroyed;

5.      For an order directing, pursuant to 15 U.S.C. § 1116(a), Defendants to file with the Court and serve upon UGAA's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

6.      For an order directing an accounting and judgment be rendered against Defendants for:

a.      all damages UGAA has incurred as a result of Defendants' unlawful conduct, as provided for in 15 U.S.C. § 1117;

b.      all profits received by Defendants as a result of their unlawful conduct for products found to violate UGAA's rights, as provided for in 15 U.S.C. § 1117;

c.      an award of treble damages to UGAA for Defendants' willful and deliberate conduct based on Defendants' intentional use of the UGAA Marks and intentional effort to pass off Defendants' products, pursuant to 15 U.S.C. § 1117;

    d.    an award to UGAA of punitive damages, to the extent awardable, for Defendants' state law violations pursuant to O.C.G.A. § 51-12-5.1;

    e.    an award to UGAA for corrective advertising damages;

    f.    an award to UGAA for costs, including reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. §§ 1114 and 1117; and

    g.    an award to UGAA for interest, including prejudgment and post-judgment interest, on the foregoing sums;

7.    For such other and further relief as this Court may deem just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

UGAA demands trial by jury of all issues so triable.

DATED: December 22, 2022    Respectfully submitted,

KING & SPALDING LLP

   s/ *Russell E. Blythe*
Holmes J. Hawkins, III
  GA Bar No. 338681
Russell E. Blythe
  GA Bar No. 141379
Charles Spalding, Jr.
  GA Bar No. 411926
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

Telephone: (404) 572-4600
Facsimile: (404) 572-5134
hhawkins@kslaw.com
rblythe@kslaw.com
cspalding@kslaw.com

Richard Groos
  *pro hac vice* to be filed
Sheri Hunter
  *pro hac vice* to be filed
500 W. 2nd Street
Austin, Texas 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100
rgroos@kslaw.com
shunter@kslaw.com

*Counsel for Plaintiff*
*University of Georgia*
*Athletic Association, Inc.*